IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DAVID EDWARD RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No.  1:05-cv-709-MHT-DRB |
| ) | |
| GENEVA COUNTY JAIL, et al. ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Greg Ward, Sheriff of Geneva County, Alabama, Carl Rowe, Jail Administrator of the Geneva County Jail, Jailer Donald Weeks, and Matron Amber Paul, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

Plaintiff David Edward Richardson filed his Complaint against the Geneva County Jail, Greg Ward, Carl Rowe, Donald Weeks, and Amber Paul on August 1, 2005.  (Plaintiff's Complaint, p. 2)  On August 3, 2005, the Magistrate Judge entered a Report and Recommendation that the Geneva County Jail be dismissed pursuant to the provisions of 28 U.S.C. 1915(e)(2)(B)(i).  (Report and Recommendations dated August 3, 2005.)  That same date Defendants Greg Ward, Carl Rowe, Donald Weeks, and Amber Paul were Ordered to File a Special Report within forty days of the date of the Order.  (Order to File Special Report dated August 3, 2005.)  On August 23, 2005, the District Judge adopted the Report and Recommendation of the Magistrate Judge and dismissed Plaintiff's claims against the Geneva County Jail.  (Order dated August 23, 2005.)  On September 14, 2005, the Defendants' Motion

for Motion for Extension of Time to file their Answer and Special Report was granted, making Defendants' Special Report due on October 24, 2005.  (Order dated September 14, 2005.)

Plaintiff David Edward Richardson was booked into the Geneva County Jail on June 25, 2005, after being arrested on charges of possession of a controlled substance, criminal littering, and probation violation.  (Exhibit A, Inmate File of David Edward Richardson, "Inmate File," Booking Sheet dated June 25, 2005; Exhibit B, Inmate File, Prisoner Activity Sheet;.)  Plaintiff was a pre-trial detainee at the Geneva County Jail at the time of the filing of his Complaint.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he was denied medical attention, that he had to sleep on the floor, that there are no rails to help him get up or support him walking, that he requested to get his walker but was refused, that he was bitten by bugs, that the toilet overflowed on the floor, and that he got a staff infection.  (Plaintiff's Complaint, pp. 2-3.)  Plaintiff requests that the jail be required to implement "some kind of railing."  (Plaintiff's Complaint, p. 3.)  He further requests one million dollars for pain and suffering.  (Id.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to meet the requirements of the Prison Litigation Reform Act and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

I.   **FACTS**

    A.   **Medical Claims**

The Geneva County, Alabama Sheriff's Department operates the Geneva County Jail pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates. (Exhibit C, Affidavit of Sheriff Greg Ward, "Ward aff." ¶ 5; Exhibit D, Affidavit of Geneva County Jail Administrator Carl Rowe, "Rowe aff. " ¶ 4).

It is the policy of the Geneva County, Alabama Sheriff's Department that all inmates confined in the Geneva County Jail be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained. All medical care rendered to inmates in the Geneva County Jail is delivered under the direction of a licensed health care practitioner. It is departmental policy that no member of the jail staff, or any other Sheriff's Department employee, may ever summarily or arbitrarily deny an inmate's reasonable request for medical services. All judgments regarding the necessity of medical treatment are left to a licensed health care practitioner. (Ward aff. ¶ 6; Rowe aff. ¶ 5).

It is the policy of the Geneva County Sheriff's Department that all inmates incarcerated in the Geneva County Jail be allowed to request health care services at any time. Requests of an emergency nature may be made either verbally or in writing, but all requests for non-emergency care from state or county inmates must be submitted in writing. Members of the jail staff are charged with the responsibility of accepting requests for medical treatment from inmates and taking appropriate action to see that those requests are dealt with in a prompt and appropriate

3

manner. Inmates with non-emergency medical problems are taken to see Dr. O.D. Mitchum in Geneva, Alabama. Inmates who have an emergency medical problem are taken to the Emergency Room for treatment. (Ward aff, ¶ 7; Rowe aff. ¶ 6.)

When a member of the jail staff receives a request for medical treatment from an inmate, it is his or her responsibility to turn that request form over to the responsibility of the on duty jailer or matron. It is then the on duty jailer or matron's responsibility to make an appointment for the inmate with an appropriate health care provider. Any doubt as to whether an actual need exists for medical treatment is resolved in favor of the inmate, with medical services being offered. All requests of an emergency nature are handled immediately. (Ward aff. ¶ 8; Rowe aff. ¶ 7) .

It is the policy of the Geneva County Sheriff's Department that persons incarcerated in the Geneva County Jail be entitled to safe and accurate dispensation and administration of prescription and nonprescription medication. All medication prescribed for an inmate by a health care provider during the time of an inmate's incarceration is obtained by the Sheriff's Department and distributed according to the doctor's directions. When distributing medications, members of the jail staff complete a medication log, which records the inmate's name, the medication, the date and time it was delivered, the initials of the officer delivering the medication, or supervising its delivery, and the inmate's initials or signature acknowledging receipt. (Ward aff. ¶ 9; Rowe aff. ¶ 8.)

The Jailers at the Geneva County Jail have access to over the counter medication such as Tylenol, Ibuprofen, and Pepto-Bismol obtained from Geilstrap Drugs to distribute as needed to inmates. (Ward aff. ¶ 10; Rowe aff. ¶9; Ruppel aff. ¶ 5.)

In late June or early July[1], Plaintiff requested to see a doctor. (Exhibit E, Inmate Request Form dated July 5, 2005, by Jail Administrator; Rowe aff. ¶ 12) On July 13, 2005, Plaintiff was taken to see O.D. Mitchum, MD. (Exhibit B; Exhibit F, Inmate File, Bill from Dr. Mitchum; Exhibit G, Records from O.D. Mitchum, MD; Rowe aff. ¶ 12; Exhibit H, Affidavit of Donald Weeks, "Weeks aff." ¶ 9.) During his doctor's visit, Plaintiff placed several calls from the exam room phone. (Id.) Therefore, Plaintiff's privileges were suspended. (Ex. B)[2] The records show that Dr. Mitchum prescribed medication but not a walker for Plaintiff. (Ex. G.) Plaintiff was given his prescribed medications by members of the jail staff. (Exhibit I, Inmate File, Inmate Medication Logs.) The records received from Dr. Mitchum's office similarly do not support Plaintiff's allegation that he had a staff infection. (Exhibit G, Records from O.D. Mitchum, MD.)

    **B.    Jail Conditions**

        **1.    Sleeping Conditions**

All inmates, including the Plaintiff, are always provided with, a mattress and bed linens for sleeping in the event that the number of inmates exceeds the number of beds at the jail. Never has the Plaintiff had to sleep on the floor without a mattress and bed linens. (Rowe aff. ¶ 12; Weeks aff. ¶ 7.)

        **2.    Alleged Disability**

Plaintiff is not disabled. (Rowe aff. ¶ 13; Weeks aff. ¶ 8.) He walks well without any aid. (Rowe aff. ¶ 13; Weeks aff. ¶ 8.) The records from Dr. Mitchum's office do not show that

---

[1] The Plaintiff dated his request form June 3, 2005. However, Plaintiff was not booked into the Geneva County Jail until June 25, 2005. The Jail Administrator responded to the request on July 5, 2005. Therefore, the request form was filled out sometime between June 25, 2005, and July 5, 2005.
[2] The remainder of Plaintiff's Inmate File and Inmate Medical File not previously identified as separate exhibits is attached hereto as Exhibit K.

Plaintiff was prescribed a walker. (Ex. F.) Even so, Plaintiff never requested a walker or hand rails. (Rowe aff. ¶ 13; Weeks aff. ¶ 8.)

### 3. Maintenance of Jail

The Geneva County Jail is subject to routine maintenance and repairs on a regular basis by the custodian. The Jail facility is regularly sprayed for insects. (Rowe aff. ¶ 9; Weeks aff. ¶ 4.) Plaintiff never complained about having been bitten by a spider or any other kind of insect. If he had made such a complaint, or request for medical attention, the Jail Administrator would have informed the proper health care provider and/or scheduled an appointment for the Plaintiff with the same. (Rowe aff. ¶ 9.)

Oftentimes inmates will purposefully overflow the toilets by stopping the toilet up with objects such as razors or even a toilet brush and then repeatedly flushing the toilet. On the occasion that Plaintiff is referring to, around the 4th or 5th of July, one of the jail toilets was purposefully overflowed by inmates. However, jail staff members ensured that the toilet was fixed that day. (Rowe aff. ¶ 10 Weeks aff. ¶ 5.) Plaintiff never had to sit or sleep in water from a toilet that overflowed. (Rowe aff. ¶ 11. Weeks aff. ¶ 6.)

### C. Grievance Procedure

Internal grievance procedures at the Geneva County Detention Facility are available to all inmates and such policy is made known to the inmates upon their admission to the detention center via the Inmate Rules and Regulations Handbook. It is the policy of the Geneva County Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have. It is further the policy and

procedure of the Geneva County Detention Facility to place each such grievance in the inmate's file for a record of the same. (Rowe aff. ¶ 15.)

Upon review of the Plaintiff's inmate file, there is no grievance filed by him concerning the allegations made the basis of his complaint. (Rowe aff. ¶ 16; Weeks aff. ¶ 12.) Had a grievance been received, jail procedures would have been followed in responding to the grievance. The first and only grievance received by jail staff is the grievance form that was attached to his Complaint was not filed with the jail. The jail did not receive that grievance until the defendants received the Complaint in this lawsuit. (Rowe aff. ¶ 16.)

### D. Defendants' Knowledge of the Allegations Made the Basis of Plaintiff's Complaint.

Sheriff Greg Ward has no personal knowledge of the allegations made the basis of Plaintiff's Complaint. (Ward aff. ¶ __.)

Amber Paul is the Jail Matron at the Geneva County Jail. (Exhibit J, Affidavit of Amber Paul, "Paul aff." ¶ 2.) She has no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint. (Paul aff. ¶ 3.) She is responsible for the female inmates and their needs. (Paul aff. ¶ 4.) She does not work with the male inmates except to feed them or answer a knock if the Jailers on duty or too busy. (Paul aff. ¶ 4.) Plaintiff never asked Amber Paul for medical attention. (Paul aff. ¶ 5.)

## II. Law

### A. All claims by Plaintiff against Defendants in their official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989)

(holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claim must fail because 42 U.S.C.A. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C.A. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claim against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacity fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

  **B.**  **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

    **1.**  **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Geneva County Jail. Plaintiff did not file any grievance with the Geneva Count Jail. The grievance form that was attached to his Complaint was not received by Defendants

8

until they received it attached to the Complaint. Even so, the only claims addressed in the grievance were that he had to sleep on the floor and that the toilet was stopped up. (Request From filed with Plaintiff's Complaint.) The grievance did not reference his allegations that he was denied medical care, that there are no rails to help him get up or support him walking, that he requested to get his walker but was refused, that he was bitten by bugs, and that he got a staff infection. (Request From filed with Plaintiff's Complaint.) Secondly, he has not alleged that he pursued *any* grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Geneva County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

> 2. **Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior

showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). There is no record that Plaintiff suffered any physical injury that is greater than de minimus as a result of any alleged constitutional violation. Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his complaint is due to be dismissed.

    **C.    Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Public officials, like Defendants here, are protected in their individual capacity by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed." Anderson v. Creighton, 483 U.S. 635, 636 (1987) (emphasis added). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

Our circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that `he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849). "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law." Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994).

Once it is established that the Plaintiff has stated a claim and that the Defendants were acting within their discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established." In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994); Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc).

Not only must the "clearly established" law pre-date the subject incident, the law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)). While the facts of prior cases establishing the law in a particular context need not be identical, they must be at least "materially similar." Adams, 862 F.2d at 1575 (Edmondson, J., dissenting) (approved en banc, 998 F.2d 923). This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Id. at 1150.

The evidence clearly shows that Defendants have not committed a constitutional violation, and even assuming a constitutional violation, Defendants have done nothing to cross

any bright line of clearly established constitutional law. Therefore, they are entitled to qualified immunity.

        **1.**        **Defendants Were Not Deliberately Indifferent With Respect To Plaintiff's Conditions Of Confinement**

In Farmer v. Brennan, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. 825, 828 (1994). This "subjective recklessness" standard allows an official to avoid liability when he fails "to alleviate a significant risk that he should have perceived, but did not." Id. Plaintiff has not shown that Defendants were or should have been aware of any of the conditions of which he complains. Therefore, Plaintiff cannot meet his burden in establishing deliberate indifference on the part of Defendants.

        **2.**        **Defendants Were Not Deliberately Indifferent With Respect To Plaintiff's Medical Care**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, Plaintiff has not shown that he had a serious medical condition. Further, the evidence shows that, throughout Plaintiff was promptly taken to see a medical doctor for his medical complaints. Clearly, Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[3] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by O.D. Mitchum, M.D., Defendants, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of a medical doctor. Therefore, Defendants are entitled to qualified immunity from Plaintiff's claims.

---

[3] The medical director was a trained and licensed nurse. 302 F.3d at 846.

      **3.     To The Extent That Plaintiff's Claims Are Construed As Being Based On Title III the ADA, These Claims Are Due To Be Dismissed.**

         **(a)     Defendants, in their individual capacities, are not subject to suit under the ADA.**

See Kruger v. Jenne, 164 F.Supp.2d 1330, 1337 (S.D.Fla. 2000) ("The ADA does not provide for individual liability.")

         **(b)     Defendants, in their official capacities, are not liable for money damages under Title II of the ADA.**

Title II of the ADA, which prohibits discrimination by public entity in administration of services, programs, or activities, as applied in jail cases, does not validly abrogate the States' sovereign immunity and cannot be enforced against these Defendants in a suit for monetary damages. Miller v. King, 384 F.3d 1248, 1275-1276 (11th Cir. 2004).

         **(c)     Defendants have not violated the ADA.**

"To prove a claim under Title II of the ADA, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from the participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity; (3) by reason of such disability." Miller v. King, 384 F.3d 1248, 1265 (11th Cir. 2004). Under the ADA "disability" is established if the plaintiff shows he has: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [that he is] regarded as having such an impairment. " Id. at 1265. Plaintiff cannot show any of these elements. Further, he has not shown that he was excluded from participation in or denied the benefits of any service, program, or activity of the jail or that he was otherwise discriminated against because of any alleged disability. Also, Plaintiff has made no showing that he requested an accommodation

or that any accommodation was reasonable or necessary in this case. Therefore, Plaintiff has not shown a violation of his rights.

In addition, Plaintiff cannot point to any case law that would give Defendants fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

### D    Plaintiff has failed to allege personal involvement as required by 42 U.S.C. §1983.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. <u>Swint v. City of Wadley</u>, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. <u>Zatler v. Wainwright</u>, 802 F. 2d 397 (11th Cir. 1986).

#### 1.    All of Plaintiff's claims against Sheriff Greg Ward must fail because he had no personal involvement in the alleged constitutional violation.

The Plaintiff has failed to allege that Sheriff Ward was in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement. Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts – in fact, the Complaint is completely devoid of any claim against Sheriff Ward-- to show that this Defendant personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how this Defendant violated his constitutional rights. Sheriff Ward has no personal knowledge of the allegations made the basis of Plaintiff's Complaint. As such, Plaintiff's claims are due to be dismissed against this Defendant.

To the extent that Plaintiff's claim against Sheriff Ward is an attempt to hold him liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996). There are absolutely no facts that show a causal connection between any action of Sheriff Ward and the alleged constitutional violation. Therefore, Plaintiff's claims against Sheriff Ward are due to be dismissed.

### 2. All claims against Amber Paul must fail because he had no personal involvement in the alleged constitutional violation.

The Plaintiff has failed to allege that Amber Paul was in any way personally involved in the alleged violations of Plaintiff's constitutional rights. Amber Paul is the Jail Matron at the Geneva County Jail. (Exhibit C, Affidavit of Amber Paul, "Paul aff." ¶ 2.) She has no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint. (Paul aff. ¶ 3.) She is responsible for the female inmates and their needs. (Paul aff. ¶ 4.) She does not work with the male inmates except to feed them or answer a knock if the Jailers on duty or too busy. (Paul aff. ¶ 4.) Plaintiff never asked Amber Paul for medical attention. (Paul aff. ¶ 5.)

Plaintiff has offered no allegation demonstrating that Amber Paul was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts in the Complaint to show that Amber Paul violated Plaintiff's constitutional rights. As such, Plaintiff's claims are due to be dismissed against Amber Paul.

17

E.  **Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[4] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff David Edward Richardson in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

---

[4] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**MOTION FOR SUMMARY JUDGMENT**

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 24th day of October, 2005.

>s/C. Richard Hill, Jr.
>C. RICHARD HILL, JR. Bar No. HIL045
>Attorney for Defendants
>WEBB & ELEY, P.C.
>7475 Halcyon Pointe Drive
>Post Office Box 240909
>Montgomery, Alabama  36124
>Telephone:  (334) 262-1850
>Fax:  (334) 262-1889
>E-mail:  rhill@webbeley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 24th day of October, 2005, I have served the foregoing document on the following:

>David Edward Richardson
>Geneva County Jail
>P.O. Box 115
>Geneva, AL 36340

by placing a true and correct copy of the foregoing in the U.S. Mail, postage prepaid, on this the 24th day of October, 2005.

>s/C. Richard Hill, Jr.
>OF COUNSEL